O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOEL RUBENSTEIN,<br><br>           Plaintiff,<br><br>    v.<br><br>NATIONAL RECOVERY AGENCY, INC.,<br><br>           Defendant. | Case No. 2:11-cv-06680-ODW(SHx)<br><br>**ORDER RE MOTION FOR ATTORNEY'S FEES [21]** |

Before the Court is Plaintiff's Motion for Attorney's Fees and Costs. (Dkt. No. 21.) Having considered the papers filed in support of and in opposition to Plaintiff's Motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15. For the following reasons, the Court **GRANTS** Plaintiff's Motion, subject to the limitations discussed below.

## I. BACKGROUND

On July 13, 2011, Defendant National Recovery Agency, Inc. telephoned Plaintiff Joel Rubenstein attempting to collect a $446.10 debt that Plaintiff claimed he did not owe. (Compl. 3.) When Plaintiff requested specific information regarding Defendant and the alleged debt, Defendant refused and threatened to call Plaintiff every day until the debt was resolved. (*Id.* at 2–3.) Defendant had reported the

alleged debt to three credit-reporting agencies, thereby harming Plaintiff's credit rating. (*Id.* at 3–4.) Subsequent to the phone conversation, Defendant informed the credit-reporting agencies that Plaintiff's debt was disputed. (Chille Decl. Ex. 1, at 1.)

Plaintiff retained counsel ("Counsel") on July 28, 2011, to resolve his issues with Defendant. (*See* Mot. Ex. B, at 1.) On August 15, 2011, Plaintiff filed a complaint against Defendant alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, and the Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), Cal. Civ. Code § 1788. (Dkt. No. 1.) Plaintiff asserted that Defendant made deceptive, misleading, and confusing representations while seeking to recover a debt Plaintiff did not owe. (Compl. 3.) Plaintiff also contended that Defendant falsely reported the alleged debt to three credit-reporting agencies. (Compl. 3–4.) At some point, Plaintiff paid the alleged debt to rectify his credit rating. (Mot. 4–5.)

In response, Defendant informed the agencies on August 9, 2011, that Plaintiff's account should be deleted, which would reverse any harm to Plaintiff's credit rating. (*See* Opp'n 2.) By September 7, 2011, two of the credit-reporting agencies had deleted Plaintiff's account. (Chille Decl. Ex. 2, at 1.) On August 29, 2011, Defendant informed Plaintiff that the third agency could take up to 90 days to delete his account, but that Plaintiff could expedite the process by filing a dispute directly with the credit-reporting agency himself. (Chille Decl. Ex. 3, at 1.) Defendant provided Plaintiff with the website address where Plaintiff could file his dispute. (*Id.*) Plaintiff did not follow this advice until February 13, 2012—more than five months after Defendant suggested Plaintiff do so.[1] (Mot. Ex. B, at 3.)

///

---

[1] The Court acknowledges that Counsel's billing records indicate he advised Plaintiff to *resubmit* the dispute with the credit-reporting agency; however, there is no direct indication Plaintiff submitted a dispute prior to this date.

According to Counsel's billing records, Plaintiff began settlement negotiations on August 29, 2011. (Reply 5.) On September 22, 2011, Plaintiff demanded $15,000.00 to settle the case. (Chille Decl. ¶ 13(e); *see* Reply 5.) Defendant rejected this request.

On February 6, 2012, Defendant offered $3,000.00 to settle the case, inclusive of attorney's fees and costs. (Mot. 6.) Plaintiff declined the offer, so Defendant increased the amount by $750.00; this too was rejected. (*Id.*)

Later on February 6, 2012, Defendant served Plaintiff with a Federal Rule of Civil Procedure 68 Offer of Judgment for $2,500.00, exclusive of attorney's fees and costs. (Opp'n 3.) The Offer of Judgment represented the maximum statutory awards under the FDCPA and the RFDCPA—$1,000.00 each—and Plaintiff's actual damages of $500.00. (Mot. 6.) Reasonable attorney's fees and costs were to be determined subsequently. (*Id.*) Plaintiff accepted Defendant's Offer of Judgment on February 14, 2012. (*Id.*)

Following these events, Plaintiff filed a Motion for Attorney's Fees and Costs. (Dkt. No. 21.) Plaintiff seeks an hourly rate of $325.00 for 50.6 hours of work, totaling $16,445.00. (Mot. 10.) In opposition, Defendant argues Counsel's hourly rate and total number of hours expended on the case are excessive. (Dkt. No. 22.)

## II.   LEGAL STANDARD

In the United States, each party to a lawsuit ordinarily is responsible for its own attorney's fees, absent "express statutory authorization to the contrary." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). Both the FDCPA and RFDCPA authorize an award of costs and reasonable attorney's fees in a successful action to enforce liability for a violation of the Acts. 15 U.S.C. § 1692k(a)(3); Cal. Civ. Code § 1788.30.

Courts use a two-part test to determine whether a fee is reasonable. *Pennsylvania v. D.E. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564 (1986). First, a court determines a "lodestar" amount by multiplying the number of hours reasonably expended by a reasonable hourly rate. *Id.* Second, the court may

employ various factors to adjust the lodestar amount as necessary. *Id.* at 564–65. There is a strong presumption that the lodestar figure represents a reasonable fee. *Perdue v. Kenny A.*, 130 S. Ct. 1662, 1673 (2010). Nevertheless, the party requesting the fees first must prove that the hourly rate and number of hours that go into the lodestar calculation are reasonable themselves. *Intel Corp. v. Terabyte Int'l*, 6 F.3d 614, 623 (9th Cir. 1993).

A court must clearly articulate its reasoning in evaluating the propriety of an hourly rate or hours claimed and in making any adjustments to the hourly rate, hours claimed, or lodestar amount. *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1148 (9th Cir. 2001).

### III. DISCUSSION

Plaintiff requests $16,445.00 in fees for 50.6 hours of work at $325.00 per hour. (Mot. 16–17.) The Court first addresses the propriety of Plaintiff's requested hourly rate, followed by the quantity of hours worked. The Court then calculates the lodestar amount and adjusts it as necessary.

#### A. THE HOURLY RATE IS EXCESSIVE

The Court must evaluate whether Counsel may reasonably charge $325.00 per hour to litigate a case involving FDCPA and RFDCPA claims. In determining a reasonable hourly rate, a court should consider the prevailing rate in the community for similar work by attorneys of comparable skill, experience, and reputation. *Van Skike v. Dir. of Office of Workers' Comp. Programs*, 557 F.3d 1041, 1046 (9th Cir. 2009). The relevant community is where the district court sits. *Id.* Accordingly, the Court considers attorney's fees awards in the Central District of California.

"Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). Counsel has been practicing law for just over 10 years and has

1  substantial experience litigating FDCPA and RFDCPA claims.  (Mot. Goldstein Decl.
2  ¶¶ 4–5.)   The Court considers these qualifications in analyzing reasonableness of
3  Counsel's hourly rate.
4       Plaintiff contends $325.00 is a reasonable hourly rate for an attorney litigating a
5  case involving FDCPA and RFDCPA claims.  (Mot. 9–10.)  Plaintiff supports his
6  contention by citing a consumer law attorney's fee survey published in 2007 ("2007
7  Survey") and two cases where Counsel was previously awarded that rate.  (Mot. 9–10
8  (citing *Cuevas v. Check Resolution Servs. Inc.*, No. 09-CV-8823 (C.D. Cal. Sept. 9,
9  2010) and *Martinez v. Cross Point Assocs., LLC*, No. 11-CV-7389 (C.D. Cal. Mar. 12,
10 2012); Goldstein Decl. 3.)   The Court is not persuaded by Plaintiff's supporting
11 evidence.
12      The 2007 Survey reports an average hourly rate of $367.00 for a consumer law
13 attorney in the California Region with 6–10 years of experience.  Were the survey
14 results reliable, Plaintiff's requested hourly rate of $325.00 might seem reasonable;
15 however, the survey is highly suspect.  For example, the author is a consumer law
16 attorney and therefore has an inherent conflict of interest in the results of his survey.
17 (Mot. Ex. D.)  Likewise, the consumer law attorneys who responded to the survey—if
18 aware it would be used as evidence in the future to support a reasonable hourly rate—
19 had an incentive to inflate their wages.  (*Id.* at 2.)   Furthermore, there is an
20 unexplained drop in the reported average hourly rate for attorneys with 21 to 25 years
21 of experience in the California Region.  (*Id.* at 9 (reporting an average hourly rate of
22 $450.00 for attorneys with 16 to 20 years of experience but a rate of only $297.00 for
23 attorneys with 21 to 25 years of experience).)  One might suppose this is simply a
24 typographical error, but there are similar instances throughout the report.  (*Id.* at 8
25 (reporting an abnormally high rate for attorneys with 11 to 15 years of experience in
26 the Atlantic Region); *id.* at 11 (same for Mid West Region).)   Instead, the Court is
27 persuaded that these unexplained drops in the average hourly rate are more likely due
28 to a small survey sample size.  The survey fails to indicate how many attorneys

provided responses; rather, the survey states only that all *active* members of the National Association of Consumer Advocates—a group with nationwide membership of apparently less than 2,000—and other consumer law attorneys were *invited* to participate. (*Id.* at 2; National Association Of Consumer Advocates, http://www.naca.net (last visited Apr. 20, 2012) (reporting nationwide membership "of more than 1,500 attorneys").) The survey does not, however, provide the actual response rate. Additionally, the survey admits the results are "for informational purposes only and may or may not be indicative of a particular attorney's reasonable hourly rate." (Mot. Ex. D, at 4.) Accordingly, the Court finds the 2007 Survey unreliable as evidence of a reasonable hourly rate.

As to the two cases Plaintiff cites, each of the fee awards was granted on a default judgment, and neither court provided any analysis regarding the reasonableness of the fee awards. *See Cuevas*, No. 09-CV-8823 (adopting the plaintiff's proposed order without discussing the hourly rate); *Martinez* No. 11-CV-7389 (likewise providing no analysis regarding the reasonableness of the fee award). Therefore, the Court declines to adopt these cases as reliable as evidence of a reasonable hourly rate.

In two recent cases involving FDCPA claims in the Central District of California, Counsel in this case was awarded only $275.00 per hour. *Montoya v. Creditors Interchange Receivable Mgmt., LLC*, No. CV 10-3037 (PSG) (Ex), 2011 U.S. Dist. LEXIS 64611 (C.D. Cal. June 17, 2011); *Johnson v. Curtis O. Barnes, PC*, No. CV 09-7960 GHK (RNBx), 2010 U.S. Dist. LEXIS 143286 (C.D. Cal. Dec. 13, 2010). In these cases, plaintiffs requested an hourly rate of $300.00 and $325.00, respectively, but each time the court concluded $275.00 was a reasonable rate. The Court acknowledges that *Montoya* relied in part upon *Johnson* in finding an hourly rate of $275.00 reasonable. Nevertheless, additional case law supports the courts' findings. *See Mayer v. RSB Equity Group, LLC*, No. CV 10-9096 (ODW) (AJWx), 2011 U.S. Dist. LEXIS 71879, at *4 (C.D. Cal. July 5, 2011) (finding that the

1  requested $250.00 hourly rate was reasonable for an attorney with several years of
2  experience); *McClenning v. NCO Fin. Sys.*, No. 10-CV-3631 (CAS) (RZx), 2011 U.S.
3  Dist. LEXIS 41334, at *8 (C.D. Cal. Apr. 11, 2011) (finding that the requested
4  $285.00 hourly rate was reasonable for attorneys with 10 and 12 years of experience
5  in FDCPA cases). *But see Powell v. Black Rock Asset Mgmt., LLC*, No. 11-CV-0517-
6  JST (RNBx), 2011 U.S. Dist. LEXIS 113785, at *13–14 (C.D. Cal. Sept. 30, 2011)
7  (default judgment concluding $350.00 was a reasonable hourly rate for an attorney
8  with nine years of experience based on the consumer law attorney's fee survey
9  submitted as evidence by plaintiff's counsel).

10  Although the *Powell* court found $350.00 was a reasonable hourly rate, the
11  Court is reluctant to accept *Powell*'s conclusion. The award in *Powell* was granted on
12  a default judgment. (*Powell*, 2011 U.S. Dist. LEXIS 113785 at *1.) Additionally, in
13  its finding, *Powell* relied upon a more recent version of the consumer law survey
14  ("2010 Survey") Plaintiff cites here. (*See Powell*, 2011 U.S. Dist. LEXIS 113785, at
15  *13; *id.* ECF No. 12-4.) The Court finds no reason why the 2010 Survey would be
16  more reliable than the 2007 Survey. (*See id.* ECF No. 12-4, at 3, 7 (also failing to
17  provide the actual response rate and admitting the survey results are "for informational
18  purposes only and may or may not be indicative of a particular attorney's reasonable
19  hourly rate").) Accordingly, the Court is not persuaded by the *Powell* findings.

20  Because a court in this district awarded Counsel a reasonable hourly rate of
21  $275.00 as recently as seven months ago, and in light of Counsel's skill and
22  experience, the simplicity of this case, and similar awards in previous cases, the Court
23  finds that $275.00 is a reasonable hourly rate.

24  **B.    TOTAL NUMBER OF HOURS IS EXCESSIVE**

25  Counsel logged a total of 50.6 hours in litigating this case. Defendant contends
26  this number of hours is excessive because various time entries are vague, inflated, or
27  inaccurate. The Court agrees.
28  / / /

As a preliminary matter, the Court emphasizes the simplicity of this case—there was a complaint, an answer, and minimal discovery. Apart from this current Motion, there were no other substantive filings. Factually, this case involved a single phone call and an allegedly false report to credit-reporting agencies. Shortly after Plaintiff filed the lawsuit, Defendant asked the credit agencies to delete Plaintiff's account. Two of the agencies immediately complied; the third did not. Nevertheless, Counsel managed to bill 50.6 hours.

There are several entries in Counsel's time records for phone calls or updates to Plaintiff. (*See* Mot. Ex. B (particularly entries on 09/07/2011; 09/19/2011; 09/27/2011; 10/05/2011; 11/08/2011; and 12/27/2011).) Although these entries are vague, Plaintiff expounded upon them in his Reply. (Reply Goldstein Decl. 6.) Upon review, the Court finds these hours excessive. For example, Counsel spent 0.6 hours on September 7, 2011, discussing updates to Plaintiff's credit report. (*Id.*) Discussing a one-page report—only one-fifth of which contains any relevant information—for 36 minutes is excessive. (*See* Chille Decl. Ex. 2, at 14.) On September 19, 2011, Counsel spoke on the phone for 0.7 hours to update Plaintiff regarding the case and Defendant's lack of a settlement offer. (Reply Goldstein Decl. 6.) Due to its simplicity, the Court finds 42 minutes excessive for an update of this nature.

There is a pattern of similarly excessive communications throughout this case. (*See* Reply Goldstein Decl. 6–7 (specifically communications on 09/07/2011; 09/19/2011; 09/27/2011; 10/05/2011; 11/08/2011; 12/27/2011).) As described by Plaintiff, the content of these phone calls mostly concerns either procedure of the case or updates of a simple, one-page credit report. (Reply Goldstein Decl.) The Court finds that, for such an uncomplicated case, these communications could have been accomplished in half the time, and accordingly reduces these hours by 50%. Because Counsel expended 2.9 hours on these communications, the Court reduces the total number of hours by 1.45 hours.

/ / /

1    One entry on Counsel's time records particularly stands out as being inflated. The entry indicates Counsel phoned the Defendant's attorney with no response. (Mot. Ex. B, at 2 (entry for 12/29/2012).) Counsel logged 0.2 hours, or 12 minutes. The Court finds that 12 minutes to make an unanswered phone call is excessive. The Court therefore strikes this entry from the total number of hours.

In its Opposition, Defendant asserts that several of Counsel's time entries involved clerical tasks. (Opp'n 11; Felipe Decl. Ex. 9, at 1.) Clerical tasks should not be billed at an attorney's rate. *See Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989) (explaining that clerical tasks are not enhanced just because an attorney performs them). The Court agrees that two entries—on August 15, 2011 (0.2 hours), and August 23, 2011 (0.2 hours)—involve clerical tasks. (Mot. Ex. B, at 1.) Because Plaintiff offers no rate that should apply to these tasks, the Court strikes them from the total number of hours. (*See* Reply Goldstein Decl. 4.) The total number of hours is therefore further reduced by 0.4 hours.

Finally, Defendant disputes several entries in Counsel's time records as either inaccurate or as having not occurred. (*See* Opp'n 4–5; Zimmer Decl. 6–7; Felipe Decl. Ex. 9, at 4–5.) Plaintiff fails to defend the disputed entries in his Reply.[2] For this alone the Court tends to believe Defendant. More significantly, Plaintiff asserts in his Reply that his Counsel "contacted Ms. Zimmer on or about February 15, 2012 . . . to discuss the settlement of fees." (Reply 3.) Plaintiff also maintains in his Motion that the parties met and conferred on February 17, 2012. (Mot. 4.) Yet Counsel neglected to include either of these communications in his billing records. (*See* Mot. Ex. B, at 3.) It is odd that Counsel would eagerly log unanswered phone calls to Defendant but fail to enter two substantive conversations about settling fees. These

---

[2] The Court notes, however, that Plaintiff attempts to refute Defendant's claim in an attached declaration. The Court cannot help but query whether this was a calculated attempt to avoid the 12-page limit imposed on Plaintiff's Reply. (Reply Goldstein Decl. 5.)

9

discrepancies in Counsel's records cast aspersion on the overall accuracy of his billing practices. The Court is therefore inclined to adopt Defendant's view of these entries and accordingly strikes the hours corresponding to the disputed communications on 12/09/2011; 01/09/2012; 01/22/2012; 01/23/2012; 01/27/2012; 02/18/2012; 03/05/2012; 03/06/2012, as Defendant requests. Thus, Counsel's total number of hours is reduced by an additional 2.4 hours.

In sum, the Court strikes 4.45 hours from the total. Using a reasonable hourly rate of $275.00 and an adjusted total of 46.15 hours,[3] the lodestar amount therefore is $12,691.25.

## C. THE LODESTAR AMOUNT SHOULD BE REDUCED

After making the lodestar calculation, a court may assess whether it is necessary to adjust the presumptively reasonable lodestar figure on the basis of any of twelve factors that are not already subsumed in the initial lodestar calculation. *Ballen v. City of Redmond*, 466 F.3d 736, 746 (9th Cir. 2006); *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000). These twelve factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of the other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

---

[3] The Court recognizes that conventional billing practices would not charge 46.15 hours, but would round up to 46.2 hours. When the Court reduces Counsel's excessive communications with Plaintiff by 50%, a reduction of 1.45 hours results, thereby introducing 0.05 hours into the total. The Court finds no reason to round up the final number of hours to the next tenth of an hour.

*Ballen*, 466 F.3d at 746.

Most of these factors are already subsumed in the lodestar calculation. *See Perdue*, 130 S. Ct. at 1673. However, the eighth factor is particularly relevant here. Plaintiff ultimately recovered $2,500.00—$500.00 of which are Plaintiff's actual damages, and $2,000.00 of which is the combined maximum allowable statutory award beyond actual damages for FDCPA and RFDCPA. 15 U.S.C. § 1692k(a)(2)(A); Cal. Civ. Code § 1788.30(b). In September 2011, Plaintiff was demanding $15,000.00 to settle the case. (Opp'n 3; Mot. Ex. B, at 1.) At that time, Counsel had only logged 16.5 hours. (Mot. Ex. B, at 1.) Therefore, at the hourly rate originally requested, Counsel had only billed $5,362.50. Plaintiff's settlement request of $9,637.50[4] appears disproportionately high compared to Plaintiff's ultimate recovery of only $2,500.00. Such an excessive demand might have deterred settlement and prolonged litigation. *See Daley v. A&S Assocs., Inc.*, No. CV-09-946-ST, 2010 WL 5137834 (D. Or. Dec. 10, 2010) (holding that an initial nonnegotiable demand of $3,250.00 in a case involving a $1,000.00 statutory penalty was unreasonable, and consequently reducing the lodestar amount by 20%).

Plaintiff attempts to distinguish *Daley* by arguing that, in contrast, Plaintiff's demand was not nonnegotiable. Additionally, Plaintiff points to the *Daley* court's statement that "[h]ad this demand been a starting point for negotiations, it would have been reasonable." *Id.* at *8. The Court is not persuaded. In *Daley*, the nonnegotiable demand was approximately three times the statutory penalty, a $2,250.00 difference. Here, Plaintiff's initial demand was 7.5 times the statutory penalties, a $13,000.00 difference. Such an excessive demand—negotiable or not—in a simple case like this evidences Plaintiff's unwillingness to reasonably discuss settlement. And, it appears

---

[4] $9,637.50 is the $15,000.00 settlement demand less attorney's fees expended up to that time.

to have hindered settlement here and consequently prolonged resolution of the parties' conflict.

The Court therefore reduces the lodestar amount by 20% to account for prolonged litigation and increased fees. *See id.* This adjusts the lodestar amount to $10,153.00.

Accordingly, Plaintiff's Motion with respect to attorney's fees is **GRANTED** subject to the reductions discussed above.

### D. COSTS

Plaintiff seeks costs of $566.00. The Court finds no reason why Plaintiff should not be entitled to these costs. Accordingly, the Court **GRANTS** Plaintiff's Motion with respect to costs in the amount of $566.00.

### IV. CONCLUSION

For the reasons stated above, the Court **GRANTS** Plaintiff's Motion for Attorney's Fees and Costs, subject to the reductions set forth. Accordingly, Plaintiff is entitled to $10,153.00 in attorney's fees and $566.00 in costs.

**IT IS SO ORDERED.**

April 25, 2012

_____
HON. OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE